Tammy M. Dentinger, (OSB No. 944787)
tdentinger@ghrlawyers.com
GARRETT HEMANN ROBERTSON P.C.
P.O. Box 749
Salem, Oregon 97308-0749
Tel: (503) 581-1501
Fax: (503) 581-5891

Richard Min (*pro hac vice*)
Michael Banuchis (*pro hac vice*)
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, New York 10170
Telephone: (212) 681-6400
Fax: (212) 681-6999
rmin@gkmrlaw.com
mbanuchis@gkmrlaw.com
*Of Attorneys for Petitioner, Othmane Mahjoubi*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | | |
|---|---|---|
| OTHMANE MAHJOUBI | ) | |
| | ) | |
| Petitioner, | ) | Case No. 6:24-cv-01358-AA |
| | ) | |
| v. | ) | |
| | ) | |
| DANIELLE KATHRYN ROPER | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## PETITIONER'S MOTION AND MEMORANDUM OF LAW
## TO IMPOSE SANCTIONS AND AWARD ATTORNEY'S FEES AND COSTS

I. **INTRODUCTION**

1.      Petitioner Othmane Mahjoubi ("Mr. Mahjoubi" or "Petitioner"), by and through his undersigned attorneys and pursuant to Federal Rule of Civil Procedure (FRCP) 54(d), 28 U.S.C. § 1920, Article 26 of the Hague Child Abduction Convention, and the International Child Abduction Remedies Act, 22 U.S.C. § 9007(b)(3), moves this Court for an award of attorney's fees and costs against Respondent, Danielle Kathryn Roper ("Ms. Roper" or "Respondent"), and in support thereof states the following:

2.      The International Child Abduction Remedies Act (ICARA) implements the Hague Convention and provides that: "Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b).

3.      Pursuant to FRCP 54(d)(2)(A), "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."

4.      Pursuant to 28 U.S.C. §1920, "[a] judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation

of interpreters, and salaries, fees, and expenses, and costs of special interpretation services under section 1929 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

5.      On December 13, 2024, Respondent entered into a Voluntary Return Order and agreed for the Children to return to France. [ECF No. 52]. Petitioner now seeks reimbursement for his necessary expenses incurred, including, but not limited to, court costs, legal fees and transportation costs related to the return of the Children.

6.      Petitioner moves for reimbursement of his attorney's fees of **$148,053.30**, costs/expenses paid by his attorneys on his behalf or paid directly by himself of **$76,398.38**. The total reimbursement sought is **$224,451.68.** A Declaration by Michael Banuchis describing these fees and costs is attached hereto as **Exhibit 1.**

7.      Petitioner retained Oregon counsel in connection with Respondent's legal separation proceeding. As part of that representation, Petitioner's Oregon counsel assisted Petitioner's United States counsel in connection with the Hague proceeding.[1]

8.      Petitioner also retained French counsel to represent him in connection with his divorce proceeding in France. As part of that representation, Petitioner's French counsel assisted Petitioner's United States counsel in connection with the Hague proceeding.[2]

---

[1]      The total hours and fees attested to by Petitioner's Oregon counsel is only for work performed on Petitioner's Hague case and does not include hours and fees associated with Petitioner's legal separation proceedings in Oregon.

[2]      The total hours and fees attested to by Petitioner's French counsel is only for work performed on Petitioner's Hague case and does not include hours and fees associated with Petitioner's divorce proceedings in France.

II.    **BACKGROUND**

9.     On June 30, 2024, Respondent flew to the United States with the Children and Petitioner joined them in Chicago on July 11, 2024. On August 3, 2024, after traveling to Florida, the family flew to Oregon to visit Respondent's family. The parties had plans to return to Paris on August 15, 2024, which is when Petitioner had his return flight to Paris scheduled for. Substantively, he had never seen Respondent or the Children's return flights to France.

10.    On August 5, 2024, the family celebrated Petitioner's birthday. The day after, on August 6, 2024, Petitioner went to a park intending to meet Respondent and the Children. To his surprise, Petitioner was greeted by his in-laws and served with a petition for legal separation. At that moment, Petitioner was unaware of where his children were being held.

11.    On August 15, 2024, as originally planned, Petitioner returned to Paris, France. Since the abduction and, aside from his visitation during his time in Oregon for trial, Petitioner's access to the Children has been limited to 20-minute video calls three times a week.

12.    On August 19, 2024, Petitioner filed a petition in this Court under the Hague Convention on the Civil Aspects of Child Abduction, Oct. 25, 1980, art. 13(b), T.I.A.S. No 11670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg., 10, 494 (Mar. 26, 1986) ("Hague Convention"), implemented in the United States through the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. (formerly codified at 42 U.S.C. § 11601 et seq.) ("ICARA"), seeking return of the Children to France. [ECF No .1].

13.    The evidentiary hearing for this matter was scheduled for December 12, 13, and 16, 2024. On December 12, 2024, the Court heard testimony from Respondent.

14.     On December 12, 2024, before the Honorable Ann Aiken, Respondent agreed to a Voluntary Return Order whereby she agreed to return the Children to France on or before January 3, 2024. A copy of the Voluntary Return Order can be found at ECF No. 52.

## III.     MEMORANDUM OF LAW

### A.     Attorney's Fees

15.     Article 26 of the Hague Convention provides that, "[u]pon ordering the return of a child or issuing an order concerning rights of access under the Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retain the child…to pay necessary expenses incurred by…the applicant." Hague Convention, art. 26.

16.     ICARA expands Article 26 by providing that "[a]ny court that orders the return of a child pursuant to an action [under the Hague Convention] *shall order* the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees…or other care during the course of proceedings in the action, and transportation costs related to the return of the child, *unless* the respondent establishes that such order would be *clearly inappropriate*." 22 U.S.C. § 9007(b) (emphasis added).

17.     While Article 26 of the Hague Convention provides that a court "may" award "necessary expenses" to a prevailing petitioner, ICARA § 9007(b)(3) shifts the burden to the losing respondent to show why an award of "necessary expenses" would be "clearly inappropriate." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (citing 42 U.S.C. § 11607(b)(3) – now 22 U.S.C. § 9007(b)(3) - and *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 346 (5th Cir. 2004)). Respondent thereby has the burden to establish that a fee/expense order would be clearly inappropriate.

18.     Therefore, ICARA "goes beyond the discretion bestowed by the Convention and includes a mandatory obligation to impose necessary expenses, unless the respondent establishes that to do so would be clearly inappropriate. This reflects an affirmative intention on the part of Congress to impose fees in favor of the petitioner and against the respondent in return actions filed under this statute." *Salazar v. Maimon*, 750 F.3d 514, 519-20 (5th Cir. 2014).

19.     Courts have interpreted this provision of ICARA as "creating a strong presumption in favor of fee shifting…" *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018). The Second Circuit has held that "a prevailing petitioner in a return action is *presumptively entitled* to necessary costs, subject to the application of equitable principles by the district court." *Ozaltin*, 703 F.3d at 375 (emphasis added).

20.     In *Whallon v. Lynn*, 356 F.3d 138 (1st Cir. 2004), the First Circuit explained that 22 U.S.C. § 9007(b)(3), formerly known as 42 U.S.C. § 11607(b)(3), imposes upon the district court a "*duty*…to order the payment of necessary expenses and legal fee, subject to a broad caveat denoted by the words, '*clearly inappropriate*.'" *Id.* at 140 (emphasis added).

21.     This "clearly inappropriate" caveat allows the district court "broad discretion in its effort to comply with the Hague Convention consistently with our own laws and standards." *West v. Dobrev*, 735 F.3d 921, 932 (10th Cir. 2013) (citing *Whallon*, 356 F.3d at 140). Consequently, under 22 U.S.C. § 9007(b)(3), a court issuing the return of a child "generally must require" the respondent to pay the fees, costs, and expenses associated with the return. *Chafin v. Chafin*, 568 U.S. 165, 169 (2013).

22.     The underlying purposes of Article 26 are to "restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter such conduct from happening in the first place." Hague International Child Abduction Convention:

Text and Legal Analysis, 51 FR 10494-01 (Mar. 26, 1986). Article 26 aims "not only to compensate the bearers of the expenses incurred but also to provide an additional deterrent to wrongful international child removal and retention." *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 926 (W.D. Tex. 2012). As a result, 22 U.S.C. § 9007(b)(3) "discourages manipulation of the judicial process for purposes of delay and encourages the prompt return of the child." *Salazar*, 750 F.3d at 520.

23.     The determination of reasonable attorneys' fees is a matter left up to the discretion of the Court. *See Robinson v. Equifax Info. Services*, 560 F. Supp. 3d. 235, 243 (4th Cir. 2009). However, an award of fees and costs is "appropriate" when the case is not a "difficult" one and "falls squarely within the heartland of the Hague Convention." *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010). This case was a clear cut instance of international child abduction, the precise type of conduct which the Hague Convention seeks to remedy.

24.     Although the return order was made on consent, the Court may award Petitioner necessary fees and expenses under ICARA on the basis of the Court's approval of the parties' Voluntary Return Order of the Children to France. [ECF No. 52]. *See Salazar v. Maimon*, 750 F.3d 514, 520 (5th Cir. 2014) ("Nothing in [ICARA] conditions the court's obligation to award fees on a trial on the merits or upon a judicial determination that [respondent] wrongfully retained the child within the United States."); *Webster-Colquhoun v. Colquhoun*, No. 21-cv-7101 (KMK), 2022 WL 2866470, at *3 (S.D.N.Y. July 21, 2022) (awarding attorneys' fees and expenses to petitioner following entry of voluntary return order reflecting parties' agreement to return child to Jamaica); *Onrust v. Larson*, No. 15 Civ. 122 (PAE), 2015 WL 6971472, at *7 (S.D.N.Y. Nov. 10, 2015) (noting that "to be a prevailing party under ICARA, a party need not win at trial or summary

judgment – a consent decree can suffice"); *see also Isaias v. Araque*, No. CV 23-935 (ES) (LDW), 2023 WL 11228077, at *2 (D.N.J. Nov. 30, 2023).

25.    Further, the Fifth Circuit in *Salazar v. Maimon*, 750 F.3d 514 (5th Cir. 2014) held that "both judgments on the merits and settlement agreements enforced through consent decrees are sufficient to create prevailing party status for purposes of authorizing an award of attorneys' fees," because "[a]lthough [the respondent's] relinquishment [of the child] was voluntary, the court order accepting the parties' agreement was a judicial act that modified [the respondent's] behavior to confer a direct benefit upon [the petitioner]." *Id.* at 522. Accordingly, the Court found that the "settlement order was sufficient to create a duty on the district court to order an award of necessary fees and expenses under section 11607(b)(3)." *Id.* In *Salazar*, the appellate court affirmed the district court's decision to award the petitioner attorney's fees after the parties reached a settlement in which the respondent agreed to voluntarily return the child to petitioner. *Id.* at 517.

26.    Thus, Mr. Mahjoubi needs only to set forth the amounts of those appropriately taxed costs, and the burden then shifts to Ms. Roper to prove that they are not appropriate. *Beamon v. Marshall & Ilsley* Tr. Co., 411 F.3d 854, 864 (7th Cir. 2005) ("There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate."). Costs recoverable by Mr. Mahjoubi under 28 U.S.C. § 1920 are also recoverable under the broader description of costs pursuant to ICARA, and thus any costs which Ms. Roper may argue are not properly categorized under any section of § 1920 are thus awardable under ICARA.

27.    In determining the amount of reasonable attorney's fees to award under ICARA, federal courts typically apply the lodestar method. *See Wasniewski v. Grzelak-Johannsen*, 549 F.

Supp. 2d 965, 971 (N.D. Ohio 2008); *Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998);

*Frier v. Frier*, 985 F. Supp. 710, 712 (E.D. Mich. 1997).

28.    Under the lodestar method, the Court multiplies the number of reasonable hours

expended by a reasonable hourly rate. In determining what is "reasonable," a district court's

discretion should be guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Norinder v. Fuentes*, 657 F.3d 526, 536 (7th Cir. 2011).

29.    Although the court has discretion in using these guiding factors to make a

determination as to the reasonableness of attorney's fees under the lodestar method, courts have

held that attorneys' actual billing rates are "presumptively appropriate" to use as the market rate

in a lodestar calculation. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d

1307, 1310 (7th Cir. 1996). In *Cintas Corp. v. Perry*, 517 F.3d 459 (7th Cir. 2008), the Seventh

Circuit explained "that the best evidence of whether attorney's fees are reasonable is whether the

party has paid them." *Id.* at 469.

30.    In circumstances where this "presumptively appropriate" rate is unavailable, such

as if "the court is unable to determine the attorney's true billing rate, however (because he maintains

a contingent fee or public interest practice, for example)" the Court may derive the appropriate

rate through "the next best evidence-the rate charged by lawyers in the community of 'reasonably

comparable skill, experience, and reputation.'" *People Who Care* at 1310.

31.    The figure resulting from the lodestar calculation is presumptively reasonable, but courts may nevertheless adjust the fee based on factors not included in the initial computation. *Hensley v. Eckerheart*, 461 U.S. 424, 430 (1983). Therefore, if anything, the lodestar calculation warrants an upward departure from the presumptively reasonable fee as determined by the attorneys' actual billing rates.

32.    When deciding the reasonable hourly rate, the court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). " '[T]he burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.' " *Eberly-Sherman v. Dep't of Army/NAF*, 471 F. App'x 629, 630 (9th Cir. 2012)(quoting *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See Bala v. Oregon Health & Sci. Univ.*, No. 3:18-CV-00850-HZ, 2024 WL 3785975, at *6 (D. Or. Aug. 12, 2024)(citing *Anderson v. Ross Island Sand & Gravel Co.*, No. 3:18-CV-00898-SB, 2018 WL 5993581, at *3 (D. Or. Oct. 24, 2018), *findings and recommendation adopted*, No. 3:18-CV-00898-SB, 2018 WL 5985671 (D. Or. Nov. 12, 2018); LR 54-3(a)). The most recent OSB Economic Survey was published in 2022. Courts may also consider "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience

held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).

33.    In *Albani v. Albani*, 15cv1980, 2016 WL 3074407 (S.D. Cal. May 31, 2016), the district court awarded the petitioner nearly $200,000 in attorney's fees, following the court's grant of the petitioner's petition for the return of his child to Singapore pursuant to the Hague Convention. *Id.* at *1. In *Wan v. Debolt*, 3:20-CV-3233, 2021 WL 3510232 (C.D. Ill. Aug. 10, 2021), the court granted the petitioner's petition for fees and costs in part, after ruling that the children be returned to Hong Kong under the Hague Convention. Despite the petitioner's request for $518,307 in attorney's fees, the court ultimately awarded the petitioner approximately $315,000 in attorney's fees to disburse to the five (5) attorney's that worked on the case.

34.    In *Grano v. Martin*, No. 19-CV-6970 (CS), 2021 WL 3500164 (S.D.N.Y. Aug. 9, 2021), the district court explained that the reasonable hourly rate is the "prevailing market rate, i.e., the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 3 (citing *Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005)). After having considered the reasonable market rates of attorneys with similarly credentialed attorneys, the court found an hourly rate of $500 to be reasonable. *Id.* Though the respondent asserted that the petitioner's choice to hire two law firms was unnecessary and duplicative, the district court rejected this argument, "[g]iven the complexity of the issues involved and the time limitations imposed by the circumstances" of Hague Convention cases." *Id.* at *5 (citing *Neves v. Neves*, 637 F. Supp. 2d 322, 343 (W.D.N.C. 2009)). The same reasoning should follow in the instant case, where Petitioner utilized two law firms to prosecute his case given the complexity of the case and its expedited time frame.

35.     Additionally, in determining the appropriateness of a counsel fees award, courts consider "the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition." *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016). In the instant case, Ms. Roper rather than Mr. Mahjoubi is the responsible party for the fees and costs incurred by Mr. Mahjoubi. Mr. Mahjoubi's costs were significantly increased by Ms. Roper's offers, and then retractions, for settlement, knowing her allegations did not rise to the standard required to trigger the grave risk of harm defense under the Hague convention, and instead forcing this case to go to trial.

36.     Finally, courts consider a respondent's ability to pay in making a determination as to the appropriateness of a fee award. In *Nissim v. Kirsh*, 1:18-cv-11520 (ALC), 2020 WL 3496988 (S.D.N.Y. June 29, 2020), the District Court found that the award of counsel fees did not justify a downward departure where the respondent owned several properties and had a successful career in Israel as well as future earning potential. *Id.* at *5. As detailed below, Respondent is able to pay the awarded fees and costs, as demonstrated by her financial ability to hire counsel for the Oregon legal separation proceeding that she initiated, the instant Hague Convention proceeding, and a French divorce action. Ms. Roper is employed and arranged housing for herself and the Children in Oregon, while also covering rent and the Children's schooling in France. In contrast, Petitioner, who has been unemployed for the past three years, faces an exceptionally uphill battle to pay his attorney fees resulting from Respondent's actions.

### B.     Costs

37.     Federal Rule of Civil Procedure 54(a) states that "[w]ithin thirty (30) days after the entry of final judgment . . . any party seeking to recover costs shall file with the Clerk, a notice of taxation of costs by Electronic Case Filing . . . and annex[] a bill of costs."

38.     Federal Rule of Civil Procedure 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." This rule creates a presumption in favor of awarding costs to a prevailing party and "the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003). 28 U.S.C. § 1920 allows a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

39.     The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (2019). The district court has discretion to refuse to award costs, but it must provide specific reasons for doing so. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (citing *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000)).

### 1.     Transcript Costs

40.     In general, pursuant to 28 U.S.C. § 1920(2), a court may tax as costs the "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."

41.    In *Majeske v. City of Chicago*, 218 F.3d 816 (7th Cir. 2000), the Seventh Circuit stated that courts have "long recognized that [28 U.S.C. § 1920(2)] includes trial transcripts and transcripts from other court proceedings necessarily obtained for use in the case." *Id.* at 825 (citing *Weeks v. Samsung Heavy Industries Co., Ltd*, 126 F.3d 926, 945 (7th Cir. 1997)). In that case, the court affirmed an award of costs to the petitioner for daily trial transcripts under 22 U.S.C. § 1920 where the record showed the petitioner used transcripts to prepare direct examination questions, anticipate cross-examination questions, to cross-examine plaintiffs' witness, and draft post-trial briefs. *Id.* at 825.

### 2.    Translation and Interpretation Costs

42.    Although "the category 'compensation of interpreters' in § 1920(6) does not include costs for document translation," (*Taniguchi v. Kan Pacific Saipan, Ltd.,* 132 S.Ct. 1997, 2007 (2012)), written translation costs are recoverable in cases brought under the Hague Convention, so long as the work in question was necessary and the fees were reasonable (*Contra Neves*, 637 F. Supp. 2d at 322).

### C.    Sanctions

### 1.    The Court has Inherent Power to Sanction Respondent

43.    Federal courts have inherent power to impose sanctions including an award of attorney's fees against parties for "bad faith" conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764-766, 100 S.Ct. 2455, 2463-2464, 65 L. Ed. 2d 488 (1980); *In re Ala·os Installations, Inc.,* 834 F.2d 1526, 1532 (9th Cir. 1987); The Ninth Circuit specifically requires a finding of bad faith in order for a court to grant sanctions under its inherent power. *In re Keegan Mgmt. Co. Secs. Litig.*, 78 F.3d 431,435 (9th Cir. 1996).

44.    One form of sanction the court may impose under its inherent power is an award of the opposing party's legal fees. *Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017); *Chambers,* 501 U.S. at 45. These awards are a well-recognized exception to the American rule" which generally requires each litigant to bear its own legal fees. *Chambers,* 501 U.S. at 45,· *Alyeska Pipeline Serv. Co. v. Wilderness Socy,* 421 U.S. 240, 258-59, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Taylor v. Nutter* (In re Taylor), No. CC-16-1376-KuLTa, 2017 Bankr. LEXIS 2233, at* 17 (B.A.P. 9th Cir. Aug. 9, 2017). Legal fees are justified in this case because Petitioner was compelled to litigate a frivolous and meritless case, incurring thousands of dollars in legal fees—funds he does not have—to counter Respondent's wrongful abduction of his children to the United States.

### 2.    Sanctions are Warranted under 28 USCS § 1927

45.     Under 28 U.S.C. § 1927, a party "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

46.    "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass. Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings, without more, may not be sanctioned." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996).

47.     On November 26, 2024, the day pretrial filings were due, Respondent emailed Petitioner to inform him that she was stipulating to Petitioner's *prima facie* case and would no longer challenge that France is the Children's habitual residence or argue the Article 13 wishes of the child exception. Due to this late notice, Petitioner's counsel spent significant time and resources preparing to address both claims, including preparing exhibits, incorporating the claims into the pretrial memorandum, and interviewing witnesses in France regarding the Children's habitual residence. Had Respondent's counsel conceded the *prima facie* case from the outset and only raised the grave risk of harm defense, Petitioner could have avoided substantial expenses.

48.     Respondent's attorneys forced Petitioner to prepare all documents and papers necessary for the evidentiary hearing. They insisted on the evidentiary hearing going forward despite the Respondent's allegations not raising to the standard required to trigger the grave risk of harm defense. These proceedings unnecessarily wasted Petitioner's money and judicial resources, particularly when Respondent knew that Petitioner was of limited means given his unemployment. Respondent incorrectly assumed that, due to Petitioner's limited means, she could abduct the Children to the United States without any legitimate basis and that Petitioner would be unable to afford counsel or fight for the Children's return. Even if counsel had colorable arguments, the frivolous argument that France was not the Children's habitual residence and that the toxic nature of the parties' relationship was sufficient to trigger the grave risk of harm defense, make the conduct in bad faith and sanctionable under 28 USCS § 1927.

## IV.    DISCUSSION

### A.    Attorney's Fees

#### 1.  An Award of Attorney's Fees Would Not be "Clearly Inappropriate."

49.     A grant of attorney's fees in this case would not be clearly inappropriate. This case represented a clear-cut chase of child abduction, the precise behavior which the Hague Convention was enacted to prevent and discourage. A counsel fee award would serve to discourage international child abduction.

50.     Respondent conceded to Petitioner's *prima facie* case establishing that she unlawfully retained the Children and failed to establish any affirmative defense. *See Cuellar*, 603 F.3d at 1143 (finding an award of fees and costs is appropriate when the case is not "difficult" and "falls squarely within the heartland of the Hague Convention.").

51.     Further, Respondent's bad faith conduct in this proceeding warrants an award of counsel fees to Petitioner. Discovery in this matter was complicated by the fact that many witnesses and documents were in France, as well as by Respondent's ongoing issues with production. Furthermore, the case proceeded to trial on an expedited schedule to comply with the Hague Convention. In this regard, Petitioner initially requested that the trial take place at the end of November or the beginning of December; however, Respondent's counsel claimed scheduling conflicts, only to later appear in another matter before the District Court for Western District of Washington (Petitioner's counsel here represents the petitioner in that proceeding as well) and assert readiness for trial during the first week of December. Additionally, Respondent continued to pursue a meritless and frivolous argument that France was not the Children's habitual residence up until the day pretrial filings were due.

52.     Given her conduct it cannot be said that Respondent acted in good faith or that an award of costs and fees would be "clearly inappropriate."

    2.  **The Reasonable Hourly Rate for Petitioner's Attorneys is $600/hour for Richard Min; $525/hour for Michael Banuchis; and $325/hour for Camilla Redmond**

53.     Hague Convention cases are uncommon and, thus, experience and expertise in litigating them is uncommon as well. Therefore, relying on prior case law is one of the primary ways to determine the reasonableness of the hourly rate charged by the attorneys in the case at bar.

54.     As demonstrated by attorneys' hourly rates in prior cases, the hourly rates of $600/hour for Mr. Min, $525/hour for Mr. Banuchis, and $325/hour for Ms. Redmond are reasonable and reflect their substantial experience, as well as the realities and complexity of this case.

55.     In *Wan,* the Court found that an hourly rate of $600 per hour for lead counsel, Ms. Joy Feinberg, an attorney with substantial experience handling family law and international child custody matters arising under the Hague Convention, was reasonable. *Wan*, 2021 WL 3510232, at *3.  Ms. Feinberg, however, had tried only *four* (4) Hague matters (*id.*) and resolved five (5) other Hague cases, (*id.*) which pales in comparison to the experience of Mr. Min, who has litigated approximately (50) Hague cases and Mr. Banuchis, who has litigated approximately twenty (20) Hague Convention cases.[3]

56.     In *Nissim*, a case from 2019, the Court found that $425 an hour was a reasonable hourly rate for Patricia E. Apy[4] with substantial experience in litigating complex international child custody cases (*Nissim*, 2020 WL 3496988, at *3). Therefore, hourly rates exceeding this amount would be appropriate for Mr. Min and Mr. Banuchis.

---

[3]     In *Hulsh v. Hulsh*, No. 19C7298, 2021 WL 963770 (N.D. Ill. Mar. 15, 2021), the court found that only $425 per hour was the reasonable rate for Ms. Feinberg, noting that Petitioner failed to cite to cases demonstrating appropriate market rates and that Respondent had cited to a case stating that courts in the district have not awarded more than $425 per hour in a Hague Convention case. *Id.* at 4.

[4]     A westlaw search of Ms. Apy's referenced cases shows that Mr. Min has litigated a greater number of Hague cases than Ms. Apy.

57.     In *Grano*, the District Court held that $500 per hour was a reasonable hourly rate for Jeremy D. Morley, a "leading expert on the Hague Convention" though he billed Petitioner at a rate of $600 per hour. *Grano*, 2021 WL 3500164, at *3.

58.     In *Webster-Colquhoun v. Colquhoun*, No. 21-CV-7101 (KMK), 2022 WL 2866470, at *5 (S.D.N.Y. July 21, 2022), Judge Karas found a rate of $425 per hour appropriate for Mr. Min and $325 per hour for Mr. Banuchis.

59.     The attorneys in the instant case charged hourly fees in line with the attorneys who worked on the recent *Nissim*, *Grano*, *Hulsh*, and *Wan* cases, indicating that their hourly rates here are commensurate with lawyers in the field. Mr. Min and Mr. Banuchis have commensurate experience in litigating Hague Convention comparable to any of the attorneys in the aforementioned cases. In *Wan*, the main attorneys charged fees in the range from $400 to $650 per hour. *Wan*, 2021 WL 3510232, at *8. In *Nissim*, lead counsel charged $500 per hour. *Nissim*, 2020 WL 3496988, at *3. In *Grano*, the attorneys charged $400, $600, and $675 per hour. *Grano v. Martin,* 2021 WL 3500164, at *3. In *Hulsh*, the two main attorneys charged $400 and $600 per hour for out of court work and $450 and $650 for in court work. *Hulsh*, 2021 WL 963770, at *3. While the courts had reduced the attorney's fees in some instances in the aforementioned cases, it is clear that the fees charged in the instant case are in line with other attorneys who have recently tried complex Hague Convention cases.

### 3.  The Number of Hours Expended in This Case Were Reasonable.

60.     The number of hours billed by the Petitioner's counsel in this case was reasonable. As to the reasonableness of the hours expended, the court considers "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* at *4 (citing *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

61.     The time and labor required in this case was substantial. Per the Hague Convention itself, the target timeline for resolution of a Hague Convention matter is six (6) weeks. Hague Convention, art. 11. Ms. Roper's conduct leading up to trial, as discussed in detail in preceding sections, necessitated an enormous expenditure of time and effort, including full-scale preparation for trial. Given the extraordinary number of hours required, a substantial fee award in this case is warranted.

62.     In *Ozaltin* (though the fee award was eventually found to be unwarranted upon remand for reasons discussed below that are inapplicable to the case at bar), the District Court had initially awarded the petitioner-father nearly $700,000 in attorney's fees. *Ozaltin*, 708 F.3d. at 355.

63.     In *Souratgar*, the District Court had ordered Respondent to pay an award of $283,066.62 (but the Second Circuit found such award to be inappropriate after having considered the domestic violence Respondent had been subjected to at the hands of Petitioner, a factor that is not applicable to this case). *Souratgar*, 818 F.3d at 72.

64.     In *Hulsh*, the Illinois District Court found an award of $239,955 in attorneys' fees to be reasonable. *Hulsh*, 2021 WL 963770, at *1.

65.     In *Rosasen v. Rosasen*, No. CV1910742JFWAFMX, 2020 WL 4353679 (C.D. Cal. June 5, 2020), the California District Court awarded $150,000 in legal fees for work performed by Petitioner's counsel.

66.     In *Ovalle v. Perez*, No. 16-CV-62134, 2017 WL 7792719 (S.D. Fla. Nov. 9, 2017), *report and recommendation adopted*, No. 16-CV-62134-CIV, 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017), the Florida district court found that a fee award of $107,503.20 was reasonable for approximately 281 hours worked by Petitioner's counsel.

67.    In the recent *Tereshchenko v. Karimi*, No. 23CV2006 (DLC), 2024 WL 3342759, at *5 (S.D.N.Y. July 9, 2024), appeal withdrawn, No. 24-1898, 2024 WL 4542998 (2d Cir. Sept. 9, 2024), Mr. Min and Mr. Banuchis represented the petitioner, who was awarded attorneys' fees and costs in the amount of $253,139.27.

### 4. Respondent Did Not Have a Reasonable Basis for Believing that She Could Lawfully Retain the Children from Petitioner

68.    This case is clearly distinguishable from Hague Cases in which the court denied an award of counsel fees based on Respondent having a reasonable basis for believing that their actions were not wrongful. For example, in *Ozaltin,* where the District Court had awarded the petitioner-father nearly $700,000 in counsel fees after having ordered the respondent-mother to return the children to Turkey, the Second Circuit found that an award of full expenses would be unwarranted, given that the mother had a "reasonable basis for thinking she could remove the children from Turkey" based on how the Turkish courts had repeatedly implied that the children could live with her in the United States. *Ozaltin,* 708 F.3d at 376.  Additionally, the Second Circuit considered how the father may have taken actions suggesting he had engaged in forum shopping, which could have increased the difficulty and costs of resolving the dispute. *Id.* The Second Circuit therefore held that given the circumstances, an award of necessary expenses would be inappropriate. *Id.* at 378.

69.    The case at bar is more analogous to *Nissim*, where the District Court found that Petitioner's request for attorney's fees and costs was not "clearly inappropriate," given Respondent's conduct of removing the Child from its habitual residence of Israel to New York "without any reasonable basis for believing that the move was appropriate." *Nissim*, 2020 WL 3496988, at *2-3. There, Respondent had made the unilateral decision to move the child while the petitioner was completely unaware.

70.     Respondent is responsible for the circumstances giving rise to the fees and costs associated with the petition. Like the Respondent in *Nissim*, Ms. Roper had no reasonable basis for believing that she could keep the Children in the United States.

**5.  Respondent is Capable of Paying a Full Award of Attorney's Fees.**

71.     Finally, Respondent has demonstrated the ability to pay the award for fees and costs, as evidenced by her financial capacity to hire Oregon counsel, Hague counsel, and French counsel. Ms. Roper enrolled the Children in school and secured housing for herself and the Children in Oregon, while also paying for rent and the Children's education in France. In contrast, Petitioner, who has been unemployed for three years, is unable to cover his attorney fees incurred due to Respondent's actions.

**B.     Costs**

1.  Transcript Costs

72.     In the case at bar, Petitioner obtained transcripts, which were necessary for use in the case. The transcripts were necessary due to the length of the case. *See, e.g. Wan*, 2021 WL 3510232, at *11. Additionally, given Respondent's contradictory statements regarding the abuse allegations, obtaining the relevant transcripts was crucial.

73.     Respondent should reimburse Petitioner for the costs associated with the same, totaling $498.05[5]. See Itemization of Costs (annexed as **Exhibit 6**).

2.  Translation and Interpretation Costs

74.     In the case at bar, many of the exhibits that were offered to and admitted by the Court needed to be translated from French to English.  In addition, two interpreters were necessary

---

[5]     Petitioner has thus far paid $2,065.50 for trial transcripts as the cost of the entirety of trial had to be paid in advance. However, since the trial concluded on the first day due to the parties' settlement, he will receive a $1,567.45 refund for the unused amount.

at trial. Petitioner should be reimbursed for these translation and interpretation costs, totaling $18,391.46 and $11,298.78 respectively. See Itemization of Costs (annexed as **Exhibit 6**).

###    C.    Sanctions

75.    Petitioner is entitled to sanctions due to Respondent's counsel's conduct throughout the proceedings, which has demonstrated a pattern of bad faith and abuse of the judicial process. Respondent's counsel has repeatedly disregarded established deadlines and engaged in dilatory tactics, causing unnecessary delays and added expense to the Petitioner. These actions have not only hindered the progress of the case but also undermined the integrity of the judicial process. Respondent's counsel's behavior has been vexatious and has placed an undue burden on the Petitioner, warranting sanctions to deter such misconduct and to ensure fair and efficient litigation. Consequently, the Petitioner seeks an appropriate sanction to address the Respondent's counsel's actions and prevent further abuse of the legal system.

76.    Petitioner's counsel has had significant issues with Respondent's counsel during these proceedings. To begin with, Respondent's counsel has offered and then retracted mediation four times. On August 19, 2024, Mr. Mahjoubi filed a Verified Petition for Return of the Children to France, initiating this action. On August 23, 2024, Ms. Seipel emailed to ask if our client was amenable to scheduling a mediation with Melissa Kucinski. We provided counsel with a mediation proposal on August 30, 2024. On September 14, 2024, Ms. Seipel emailed Ms. Kucinski to discuss scheduling logistics for mediation. On September 17, 2024, we advised counsel that we would consent to mediation on the condition that they accept service of the Hague petition, as we were unable to locate Respondent and the children, despite with the help of the U.S. State Department. We followed up on September 19, 2024, requesting confirmation of service acceptance by September 20, 2024.

77.     Having received no response, and with the Show Cause Hearing scheduled for September 24, 2024 [ECF No. 7], we informed the Court of our inability to serve the Respondent, respectfully requesting an adjournment until October 8, 2024, to continue our efforts to serve Ms. Roper. The Show Cause Hearing was rescheduled to October 8, 2024 [ECF No. 10]. On October 4, 2024, due to counsel's refusal to accept service, co-counsel Ms. Dentinger requested an additional two-week extension as we continued our efforts. The Show Cause Hearing was subsequently rescheduled to October 22, 2024 [ECF No. 13].

78.     On October 14, 2024, counsel for Respondent informed Ms. Kucinski that they no longer intended to proceed with mediation. On October 22, 2024, Respondent's counsel filed their Notice of Appearance only a few hours before the Show Cause Hearing [ECF No. 16]. On October 29, 2024, Ms. Seipel notified us of their intention to file a motion for the appointment of a *Guardian Ad Litem* and to renew their mediation request with Ms. Kucinski. We responded that we would oppose the motion but agreed to mediation under the previously discussed terms.

79.     On November 1, 2024, we requested an update on mediation efforts, specifically asking if they had contacted Ms. Kucinski as agreed on a meet and confer on October 30, 2024. We did not receive a response.

80.     On the eve of trial, on December 2, 2024, Ms. Seipel renewed Respondent's offer for settlement. On December 5, 2024, after conversations which led Petitioner to a sincere hope for settlement and to avoid having to travel to Oregon to litigate a trial, Ms. Seipel *once again* told us that they were no longer in "settlement territory." The back and forth has been extremely difficult for Petitioner, both emotionally and financially, and he put a hold on paying for accommodation and flights to Oregon in the hopes that Respondent was going to pursue settlement, which made everything more expensive.

81.     Throughout the trial preparation, we faced significant communication issues with Respondent's counsel, who failed to respond to emails promptly. Multiple follow-ups were required to receive a response by counsel. Opposing counsel remained noncommittal about key deadlines, culminating in their refusal on November 5 to exchange agreed-upon initial disclosures, and their production of key audio and video recordings on the eve of trial. Their position that initial disclosures in Hague cases are not required was unreasonable and meritless; it appeared to be positioned simply to hide evidence and to put Petitioner at a disadvantage.

82.     On November 5, 2024, Petitioner's counsel was forced to email the Court, seeking its intervention due to Respondent's blatant obstruction of discovery. On November 6, 2024, Petitioner provided a clear explanation of the issues to the Court, and a summary of the dispute can be found in that correspondence. A copy of this email correspondence between the parties and the Court is annexed hereto as **Exhibit 3.**

83.     Opposing counsel's inconsistent communication and reluctance to adhere to procedural deadlines has hindered progress in this time-sensitive case, especially regarding mediation scheduling, pretrial coordination, and discovery.

84.     Respondent's counsel has further caused significant challenges with their production of documents. On November 8, 2024, Respondent served Petitioner with her disclosures, which included "audio recordings of Petitioner" and "video recordings of Petitioner" as potential trial exhibits. On the same day, the parties exchanged discovery demands, with Petitioner requesting "any and all documents, correspondence, and/or recordings identified in Respondent's initial disclosures or Answers to Interrogatories." Respondent's response on November 14, 2024, did not object to the request, stating that documents in her possession, custody, or control were produced. However, on November 16, 2024, Petitioner's counsel

requested that Respondent identify which documents corresponded to each specific request, provide the documents as individual files rather than a single PDF, and produce any documents listed in her initial disclosures that were not included in the initial production. After a follow-up email on November 19, 2024, Petitioner's counsel still had not received the documents, and the parties had to exchange exhibits on November 22. On November 20, Petitioner's counsel again requested a response, warning that without it, the Court's intervention would be necessary. On November 21, 2024, Respondent shared responses to Petitioner's interrogatories, which were inadequate, non-compliant with the Federal Rules of Civil Procedure, and not sworn by the client. Some interrogatories were objected to based on a vague interpretation of Local Rule 33, and others were merely directed to Respondent's initial disclosures without further detail. Finally, on November 22, 2024, Respondent sent a supplemental production that included 121 files of audio and video recordings, which some were included as Exhibits 219-226 in her exhibit list exchanged that same day.

85.    Petitioner's counsel promptly contacted the Court, resulting in a telephonic conference on November 25, 2024 [ECF No. 30]. During this conference, the Court ordered the parties to submit declarations regarding the timing and method of production of the disputed audio and video recordings. Notably, in the minute entry from the status conference, the Court "reserve[d] judgment concerning possible sanctions pending further information." [ECF No. 30]. The declarations provided, along with corresponding exhibits, can be found at ECF No. 35 and ECF No. 39. Despite Ms. Seipel's initial representation to the Court that Respondent's expert had not reviewed the audio and video recordings, she later filed a declaration acknowledging that the expert had, in fact, reviewed them. [ECF No. 31]. Additionally, she misrepresented to the Court that the audio and video recordings were produced to Petitioner on November 14, 2024, when, in

reality, they were not provided until November 22, 2024 [ECF No. 39]. This delay in the production of evidence—particularly the fact that Petitioner did not receive the recordings until the day of the exchange of exhibits—was extremely prejudicial to Petitioner, as his expert was unable to review the materials in advance and as Petitioner was not aware of the extent of evidence Respondent had to substantiate her claims. It is now apparent to Petitioner that Respondent's counsel was attempting to conduct a trial by ambush.

86.     Further, on November 26, 2024, the day that pretrial filings were due, Respondent emailed Petitioner to advise that she stipulates to Petitioner's *prima facie* case and was no longer challenging that France is the Children's habitual residence or arguing that that the Article 13 wishes of the child exception applies. Due to the significant delay in notice, Petitioner's counsel expended considerable time and resources preparing to address both claims. This included preparing exhibits, incorporating the claims into the pretrial memorandum, interviewing witnesses in France that would speak to the Children's habitual residence, and other related tasks. Petitioner's counsel could have saved Petitioner substantial expenses if Respondent's counsel would have conceded to his *prima facia* case at the outset and only raised the grave risk of harm defense.

87.     At this stage of trial preparation, Respondent's counsel should have recognized that the allegations of abuse did not meet the necessary standard for the grave risk of harm defense. Despite this, Respondent's counsel forced Petitioner and his counsel to travel to Oregon, compelling the Court to hear the case at trial and for Respondent to agree to return the children to France after she testified and was cross examined.

88.     All told, this matter was litigated from start to finish in four months, and the parties engaged in 118 days of active litigation from the date Petitioner's Verified Petition was filed until

settlement at the end of the first day of trial. Respondent's conduct throughout not only drained valuable judicial resources while also imposing a significant financial burden on Petitioner.

**V.**    **Conclusion**

89.    Based on the circumstances of this case and given the qualifications of counsel, it is respectfully request that the court fix an appropriate fee for the services provided to Petitioner, and that the following amounts be paid: reimbursement of his attorney's fees of **$148,053.30,** and costs/expenses paid by his attorneys on his behalf or paid directly by himself of **$76,398.38**.  The total reimbursement sought is **$224,451.68.**

90.    Petitioner also respectfully requests the Court to impose sanctions on Respondent's counsel in the form of attorney fees pursuant to 28 USCS § 1927.

Dated: New York, New York
          December 26, 2024

                                   Respectfully submitted:

                                   /s/Michael Banuchis_____
                                   Richard Min (*pro hac vice*)
                                   Michael Banuchis (*pro hac vice*)
                                   Green Kaminer Min & Rockmore LLP
                                   420 Lexington Avenue, Suite 2821
                                   New York, New York 10170
                                   Telephone: (212) 681-6400
                                   Fax: (212) 681-6999
                                   rmin@gkmrlaw.com
                                   mbanuchis@gkmrlaw.com
                                   *Of Attorneys for Petitioner, Othmane Mahjoubi*